STATE OF MAINE

KNOX, ss.

STATE OF MAINE
Knox. S.S., Clerks Office
SUPERIOR COURT

MAR 11 2002

] RECEIVED AND FILED
Susan Guillette, Clerk

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. RE-99-17
DHM - KNO - 3|11|2002

ZEMERO CORP.,

      Plaintiff

    v.

DIANE HALL,

      Defendant

DECISION AND ORDER

DONALD L. GARBRECHT
LAW LIBRARY

MAR 18 2002

This matter is before the court after bench trial and view. Plaintiff, a Maine corporation, has brought a seven-count complaint pertaining to its ownership of real property in the town of St. George, in the area known as Tenants Harbor. The dispute arises out of the existence of four easements resulting from the division of a large parcel of land and buildings by a common owner. In the first count, plaintiff seeks a declaratory judgment as to its legal right to use rights-of-way contained within easements. Count II seeks a permanent injunction preventing defendant from interfering with plaintiff's rights-of-way. Count III alleges an easement by necessity, count IV an easement by implication, count V an easement by estoppel, count VI an easement by prescription, and count VII a prayer for punitive damages based upon defendant's alleged activity since acquisition of the property by the plaintiff.

By deed dated May 13, 1999, the plaintiff acquired a parcel of land from Timothy A. Holmes and Gabrielle Holmes on the southerly side of Route 131. Also acquired by that deed were easements over land of A. True and Shirley L. Hall. The first easement and right-of-way is to use the northerly portion of the Hall's parking lot and right-of-way from the westerly side of Mechanic Street. The second easement conveys an easement and right-of-way over a 20 foot strip of land, known as the lower parking lot,

from the westerly side of Mechanic Street to the easterly boundary of plaintiff's land for the purpose of maintaining a septic system. The third easement is a right-of-way for a term ending January 10, 2003, over the 20 foot strip described in the second easement for the purpose of providing access to the rear of plaintiff's building "providing for loading and unloading of goods and supplies." The fourth easement involves a perpetual right and easement to draw water from a well located on property of Hall.

By deeds of Mitchell in 1964 and Hall in 1968, A. True Hall and Shirley Hall acquired a large parcel of land on the corner of Route 131 and Mechanic Street. A building on Route 131 was and is a grocery store and the building on Mechanic Street was and is a real estate office, among other activities. It appears that Mr. Hall owned and operated the grocery store as well as conducted real estate activities. In January of 1980, A. True and Shirley Hall leased the grocery store to Timothy and Gabrielle Holmes, which lease was renewed for three years in 1985. By deed of January 11, 1988, A. True Hall and Shirley L. Hall conveyed the grocery store property to Timothy A. and Gabrielle Holmes. As the owner of the entire parcel being divided by the deeds of 1988, A. True Hall and Shirley L. Hall created four easements to accommodate the use and activities of the grocery store building. Because the nature of these easements and the rights of the parties are somewhat dependent upon the language, relevant portions are recited here:

> **EASEMENT FIRST**: An easement and right-of-way to use the northerly portion of the Halls' parking lot and a right-of-way from the westerly side of Mechanic Street to the fee parcel, above conveyed, for the parking of motor vehicles and a right-of-way for ingress, egress and regress from the westerly side of Mechanic Street over and upon the existing road to the easterly boundary of the fee premises, above conveyed. By acceptance of this easement, the Grantee, covenants and agrees with A. True Hall and Shirley L. Hall, to share all necessary costs of maintenance and improvements to said easement lot equally with the A. True and

2

Shirley L. Hall. (The easement is then described by metes and bounds utilizing monuments of an iron pin "in the southerly boundary of Route 131," to an iron pin at the "intersection of two stone walls and at the westerly side of Mechanic Street," to a stone wall on the westerly side of Mechanic Street and "crossing a right-of-way thirty-eight (38) feet, more or less, to the southerly boundary of an existing road," to "the southerly boundary of said existing road fifty-eight (58) feet, more or less)."

**EASEMENT SECOND:** Also conveying an easement and right-of-way over and upon a twenty (20) foot strip of land, known as the lower parking lot, from the westerly side of Mechanic Street to the easterly boundary of the fee parcel, above conveyed, the southerly boundary of said twenty (20) foot strip being twenty-six (26) feet, more or less, northerly from the northerly exterior wall of the real estate office on land of A. True and Shirley L. Hall, for the sole purpose of providing access to and from the septic system located near the southerly boundary of the fee parcel as may be necessary for maintenance, improvement and repair to said septic system. It being understood and agreed that A. True and Shirley L. Hall are reserving the right to use said strip as a parking lot for the real estate office and, further, that the right-of-way herein granted shall not interfere with such uses by A. True and Shirley L. Hall.

**EASEMENT THIRD :** Also conveying a right-of-way for a term ending on 10 January 2003, over and upon said twenty (20) foot strip described in above in **EASEMENT SECOND** for the sole purpose of providing access to the back of the store building situated on the fee providing for loading and unloading of goods and supplies. The right-of-way herein granted shall be the subject to A. True and Shirley L. Halls' continued usage of said lower parking lot for the parking of motor vehicles for the real estate office located on other land of A. True and Shirley L. Hall.

**EASEMENT FOURTH:** Also granting the perpetual right and easement to draw water from A. True and Shirley L. Halls' well located on other property of A. True and Shirley L. Hall including the right to replace, repair, and maintain the present pipes running across A. True and Shirley L. Halls' other land to the fee parcel. The grantees covenants and agrees to share all maintenance, repair and replacement costs for said well and pump equally with A. True and Shirley L. Hall and, in addition thereto, to pay the sum of Twenty-Five Dollars ($25.00) per year toward the electrical cost of operating said pump.

For comprehension purposes to describe this situation in a graphic sense, a somewhat rectangular parcel of land exists at a corner with the state highway as the northerly boundary and a town street as the easterly boundary. A building containing

a grocery and convenience store, now also dispensing gasoline, exists in the northwest corner of the rectangle. A real estate office with rooms or apartments exists in the southeast corner of the parcel. The property is divided by running a line from the easterly portion of the northerly boundary to the southerly portion of the westerly boundary thereby separating the grocery store and the real estate office into two generally speaking triangular lots. The easements in question serve to facilitate access to the easterly and southerly sides of the grocery store building from the town street, which access was removed by the division of the lot. The first easement, generally speaking, is a driveway from the town street on the easterly side to a point in the vicinity of the northeasterly end of the grocery store lot. That easement also contains a parking area. The second easement is a 20 foot strip which acts as the driveway for the real estate building running from the town street westerly. The easement continues beyond that driveway across the property line to provide access to the grocery store property. Because of the terrain, the second easement accesses the grocery store property in a basement area rather than the main floor. The third easement runs across the same 20 foot strip for access purposes and the fourth easement runs from a well on the property of the real estate office to the grocery store.

The history of the parcel is important not only because of its division and creation of the easements but also activities that have taken place that have affected the relative position of the two buildings and their land. During the period of Holmes' ownership of the grocery store, he added gas station facilities which, among other things, involved burying of fuel storage tanks. The terrain in the area is a rather considerable slope running from the northwesterly boundary generally to the southeasterly boundary resulted in the real estate office being 10 to 15 feet lower in

4

elevation than that of the grocery store. Unable to satisfactorily place the tanks underground, Holmes opted to build a concrete retaining wall and bury the tanks therein. This resulted in a change of terrain which provided a level area for the side of the grocery store but the slope then became a wall of 10 feet or so separating the properties. The property line is just a few feet from that wall. Among other things, this destroyed a foot path which existed between the real estate office and the grocery store.

The driveway described in the first easement has existed for a long time, certainly long before Mr. Hall created the easement and the parking activity has taken place on the northerly side of that driveway for the same length of time. It is a gravel driveway, unimproved, and acts as a way between the town street and the grocery store apron such that vehicles can drive directly from Route 131 to Mechanic Street. This has been of some concern for many years as to whether the public, in its use of the driveway, properly to the grocery store but improperly to simply avoid the street corner, could be prevented from gaining public rights to what is a private way. Consequently, for many years, the Halls have posted the driveway as a private way. During the years that Hall owned the entire parcel, deliveries to the grocery store were effected by utilizing the driveway in the first easement and also the driveway in the second easement for loading and unloading to the grocery store through a basement exterior door. The grocery store septic tank is buried in the ground outside of the concrete retaining wall and in the lawn in the vicinity of the grocery store basement door.

During the Halls' ownership of the entire parcel, the leasing of the grocery store by Holmes and the ownership by the Holmes, the use of the driveway in the first

5

easement was the result of full cooperation of the both owners. If a delivery truck needed to maneuver in the area or to load or unload, it was generally understood that any vehicles in the driveway would be moved to accommodate the convenience to the owners of the grocery store.

The defendant, successor to A. True Hall and Shirley Hall and a real estate broker, has wished to address the change in terrain occasioned by the concrete retaining wall. There have been issues of storm drainage and appearance. Accordingly, defendant fashioned a plan of landscaping to address these issues. While it appears that some work was done and the plan was in existence for some period, defendant's real activity started about the same time that the plaintiff acquired title to the grocery store/gas station and its land. Defendant erected a wooden fence along the property line. Initially, the fence went to the southerly edge of the graveled driveway where the defendant had previously installed granite blocks as a boundary of the graveled way. Through the use of stones and shrubs she created an embankment in the second easement next to the wooden fence. After the commencement of litigation, defendant continued her activities with respect to the easements. She added an additional section of fence to block the southerly portion of the graveled way in an area where she routinely parks her car. She attempted to instruct plowmen with respect to the maintenance of the graveled way. She rebuilt the parking area in the northerly portion of the first easement to change the parallel parking to vertical parking through landscaping by log retaining walls. She commissioned the survey of the first easement and the placement of pins. The easement survey was based upon a preexisting land survey and the metes and bounds contained in the deeds. She has refused to move her vehicle or vehicles of her tenants to accommodate the operation of the grocery store.

6

It is plaintiff's position that the activities of the defendant are not only in violation of plaintiff's rights under the easements, they are done deliberately and maliciously to interfere with those rights. They not only violate the law with respect to the easements but the common usage of these ways over many, many years including the period of time before the division of the property when the grocery store and the real estate office were in common title. The defendant argues that the first easement is not where plaintiff believes it to be, that notwithstanding the many years of history and utilization she has inherent rights to park her vehicle in the graveled portion, that she has full rights to use the easements as well as the plaintiff, that she has full rights to prevent abuse of the easements by the public, and simply making 16 foot sections of the fence removable, she has not violated plaintiff's rights with respect to the easements.

The first matter for determination is the nature of the easements and rights of each party thereto. Generally speaking, the parties agree with the general rule. As stated by defendant in quoting from 25 Am. Jur. 2nd, *Easements & Licenses* § 98, "Servient owner has all the rights and benefits of ownership consistent with the easement and the right to use the land remains in him without any express reservation to that effect so far as such right does not conflict with the purpose and character of the easement." Said another way, "in absence of a grant of exclusive use, the owners of a dominant or servient tenement must use the way in such a manner as not to interfere with another's use thereof." *Lindsey v. Shaw*, 49 So.2d 580 (Miss.). Under that guidance, the first easement provides in the plaintiff, as well as the defendant, the right to park motor vehicles and their right-of-way for "ingress, egress and regress" from Mechanic Street "over and upon the existing road" to the boundary of plaintiff's property. The principle of law is further reinforced by the provision expressly stated by A. True Hall

7

and Shirley Hall that the grantee "by acceptance of this easement" agrees to share all costs of maintenance and improvement equally."[1]  Therefore, any activity by the defendant which interferes with the ability of the plaintiff to share in the right-of-way and parking would be a violation of the deed requirements.

There is no question but that the first easement was created in order to be for the benefit of the operation of a grocery store.  Since that is a public accommodation, efforts to stop or restrict customers of the grocery store from utilizing the right-of-way or the parking would also be a violation of the easement.  This does not necessarily mean that the parties are prohibited from exercising their rights to take such steps as are necessary to prevent the public from acquiring some rights or otherwise abuse the availability.  Accordingly, the court finds no merit in a suggestion there is any violation of the easement in the posting of signs prohibiting parking or driving in the easement other than is consistent with customers of both plaintiff and defendant.  The area still remains an easement private to the fees of plaintiff and defendant and could be appropriately posted to that effect.

The court is unclear as to the nature of plaintiff's complaint of defendant's improvement of the parking area by use of log retaining walls and converting the parking from parallel to the driveway to perpendicular to the driveway.  It would appear from all of the evidence, including aerial photographs and ground photographs, that the landscaping by the defendant improved the parking, made additional parking available, and widened the driveway space.

---

[1] The court notes that the requirement to share costs runs from the grantee, in this case Zemero Corp., to A. True Hall and Shirley L. Hall.  If that condition in the easement is applied in keeping with *LeMay v. Anderson*, 397 A.2d 984, this was a personal benefit to A. True Hall and Shirley L. Hall and would not be beneficial to the defendant absent some appropriate assignment.

The precise location of the first easement requires a consideration of the language of the deed, the rules of construction for analysis of deed description, the purposes of the easement as existed at the time of its creation, and the long held utilization by predecessors in title of both plaintiff and defendant, including the common owner. The defendant has presented a surveyor who, utilizing the metes and bounds of the description, has delineated what he believes to be the location of the easement. The monuments on Mechanic Street lend themselves more appropriately to the metes and bounds. However, when the surveyor examined the southerly boundary, he was faced with a dilemma with reconciling the southerly line of the driveway as it exists on the face of the earth, and has existed since prior to 1988, and the distance as recited in the deed. To attempt to find the line he found it necessary to utilize the boundary distance in the form of a radius to see where it most likely intersects with the plaintiff's easterly and defendant's westerly boundary. In doing so, he reached a point northerly of the existing driveway sufficient to accommodate the placement and parking of defendant's car, an object of some dispute between the parties and the accommodation of plaintiff's grocery store product delivery. Consequently, subsequent to the initiation of the litigation and the survey, defendant extended her wooden fence to cover an area enclosing her parking space. It is this fence and the car which is the subject of considerable complaint by the plaintiff as it affects the ability of her wholesalers in delivering products.

There are three important conclusions from the evidence in this regard. First, the southerly boundary of the driveway is not a straight line. While graveled roadways will meander over time, it now exists on the face of the earth as it did when photographs were taken, particularly aerial photographs, contemporaneous to the

9

creation of the easement. In 1988, when the easement was created, the southerly boundary was not a straight line and the deed specifically provides that the southerly boundary of the easement follows the southerly boundary of the existing road. Secondly, on two out of three occasions when the defendant was queried during her testimony as to the placement of the granite stones on what clearly appears to be the southerly boundary of the driveway, she testified she had the landscaper place those stones in that location with an understanding that they would be placed on the southerly boundary of the driveway. It was not until her redirect that she then testified that she did not place them there as the boundary of the driveway but to establish her parking area. Third, defendant's argument and the testimony of A. True Hall that the Halls have always parked their car in that location, that it clearly establishes a right to park the car in that area, and that the driveway had to be to the north of that parking space, is not consistent with the testimony that throughout the existence of the grocery store, whoever parked in that location routinely removed the vehicle when asked in order to accommodate the delivery trucks servicing the grocery store. There is no reason to believe the circumstances exist any differently when plaintiff acquired the property then before: the defendant parks her car on the southerly edge of the driveway with an understanding that it will be moved whenever necessary for accommodation of the plaintiff's establishment. However, the elongation of the wooden fence to cover the parking spot is a violation of the easement, does encroach on the what the court finds to be the driveway portion of the easement and must be removed.

The issues with respect to the second, third, and fourth easement are less complicated. In the second easement, there is an existing paved driveway utilized by

the defendant in parking cars for her business. Parking of the cars is not only consistent with the joint use of the easement but is expressly provided for in the easement language.[2] However, the driveway ends several feet from the wooden fence. In that location is a garden made up of a substantial number of large stones and shrubbery. To the extent the stones, the change of elevation, and the shrubbery are in the second easement, they are a violation of that easement.[3] In addition, the wooden fence blocks the easement in violation of its terms. While the defendant has argued that the sections are removable, the court observes that the sections are very large and does not find that making them removable is consistent with the rights of the easement to be utilized in a reasonable fashion by the plaintiff. At the very least, the plaintiff is entitled to a gate which can be easily unlatched or unlocked and swung open. It is the observation by this court that such a gate could easily be accommodated by turning one of the fence sections into such a gate.

Two further observations with respect to the second easement: obviously the right of the Halls to utilize the driveway for parking and the right of the plaintiff to utilize the easement for loading and unloading would call for some level of cooperation between the parties. The court notes that plaintiff has testified that she no longer loads

---

[2] Once again, the easement language says it is "understood and agreed that A. True and Shirley L. Hall are given the right to use such strip such as a parking lot . . ." and further that "the right-of-way herein granted shall not interfere with such usage by A. True and Shirley L. Hall. " It is this court's analysis of that language that the right to park in conjunction with the operation of the real estate office is personal to A. True and Shirley L. Hall and would not inure to the benefit of the defendant absent appropriate legal documentation.

[3] The court did not measure the precise location of the garden nor has a surveyed location been presented to it. The location of the second easement depends on whether the 26 foot distance from the northerly exterior wall of the real estate office is from the exterior wall nearest the driveway or the indented wall. It is this court's observation that the 26 feet runs from the wall nearest the driveway in order to be consistent with a direct easement to the vicinity of plaintiff's lower exterior door.

11

and unloads supplies from the lower door but does occasionally move equipment in and out from that door. To the extent that the third easement provides for that loading and unloading, the terrain should be restored to the extent that an appropriate truck can back to plaintiff's rear door.[4] The court further notes that the third easement is a limited easement ending January 10, 2003, at which time plaintiff makes clear she will no longer need that access.

On the other hand, the ability to have access to a septic tank for "maintenance, improvement and repair" may only require that vehicle access be necessary to the boundary line. Further, it is unclear whether service of the septic system could be made from the paved parking area depending upon the length and capacity of the septic disposal vehicle.

The court is unclear as to the issues with respect to the parties on the fourth easement to draw water from the well located on the property of A. True and Shirley L. Hall. The court understands that the plaintiff is not presently utilizing that water and has not made payments to the Halls for contribution to the operating cost of the pump. There was further testimony that the pipe may even be unserviceable. However, the easement is described as a "perpetual right."

In count I of plaintiff's complaint, it asks this court to issue a declaratory judgment declaring that it has a legal right to use the rights-of-way described and to enjoin the defendant from obstruction of the three rights-of-way, to order the defendant to remove any and all signs and obstructions and to award attorney's fees.

---

4 The plaintiff has created her own obstacle to this process by erecting a kennel in the location of the easement access. The court understands that the kennel is easily removable. In other words, if the plaintiff wants to enforce her rights to the easement by unloading and loading equipment right from that door, she has to remove her own impediments.

12

As hereinbefore described, this court is satisfied that the first easement, notwithstanding the metes and bounds in the deed, exists today exactly as it did in 1988 at its creation and that the southerly boundary of that right-of-way is where the gravel meets the grass or turf in the vicinity of the granite landscaping blocks. No activities by landscaping affecting the parking in the northerly section of the First Easement violates the rights of the plaintiff because parking areas must be equally available to plaintiff and its customers and to defendant and her customers or tenants. The defendant's use of a space in the southerly side of the driveway for parking purposes is not in violation of the easement provided the vehicle is moved upon request for reasonable needs of the plaintiff. In that regard, the rights of the plaintiff take precedent over the rights of defendant. The section of the wooden fence north of the southerly portion of the graveled way is a violation of the easement and must be removed immediately and permanently. A sign or signs indicating the private nature of the driveway and parking area in the First Easement is not inconsistent with the private rights of the plaintiff and the defendant. However, to the extent both the plaintiff and the defendant operate places of business with mobile customers, such signs should indicate that the easement area is available only for customers of plaintiff and defendant.[5] Given the standards required by the prevailing law in Maine on this subject, the court is not satisfied that plaintiff is entitled to attorney's fees in count I.

With respect to count II, plaintiff seeks an order restraining the defendant, her agents or employees from interfering with the plaintiff's use of the rights-of-way and

[5] The court is sympathetic to the complaint by the defendant that the area of the First Easement is used by persons visiting the area and/or going to sea by boat. The area of the easement is a very short distance from the waterfront and therefore very susceptible to such summer use. The complaint is legitimate. Both plaintiff and defendant would be well advised to cooperate in protecting their rights vis-a-vis the easement with respect to the transient parkers.

parking and to remove obstructions. It also requests attorney's fees. The court has made clear from its findings of fact and conclusion of law with respect to the evidence, that the plaintiff is entitled to injunctive relief consistent with the law of easements as they apply in this case.

In count III of plaintiff's complaint it seeks an easement by necessity in order to access the service of its septic system as well as loading and unloading from the lower rear entrance of the grocery store. This court declines to find such an easement by necessity since it is satisfied that plaintiff has an express easement from its deed with respect to the right-of-way to the septic system and the defendant must be permanently enjoined from interfering. While the court does not conclude the erection of the fence is inappropriate or an obstruction in violation of the easement, the particular portion in the area of the Second and Third Easements must be altered in such a way as to allow reasonable and relatively easy access through the fence. This court interprets reasonable access to permit a requirement by the dominant estate to easily unlatch a gate or, with cooperation, to unlock a gate for that purpose.

The easement for purposes of loading and unloading has significantly different features from the easement for maintenance of the septic system. Given the observed dimensions, it would appear that the plaintiff would be able to perform service and maintenance on its septic system without requiring the actual presence of a motor vehicle onto the land of the plaintiff but that such service and maintenance could be accomplished by a vehicle at the end of or just beyond the end of defendant's present driveway and parking area. Such is not true with respect to the easement for loading and unloading as that must facilitate the ability of the plaintiff to move a cargo vehicle onto its land to an area adjacent to the door to its establishment. However, that is an

14

easement limited in time which would suggest that alterations in the landscaping required by this judgment on the part of defendant in that area, while somewhat substantial until the specific date in 2003, could be somewhat restored provided it maintains the requirements of the persons servicing the septic system. The location of the right-of-way as it exists on the ground is obvious from the description. A metal stake or pipe should be driven into the ground, and below the sod, at an appropriate point 26 feet from the northerly side of the real estate office as described herein. A similar stake or pipe should be driven into the ground under the sod 20 feet to the north. Both of these activities should be conducted in the presence of both plaintiff and defendant.[6]

Count IV of the plaintiff's complaint seeks an easement by implication. Since the court has specifically determined the legal rights of the parties with respect to the written easements and the precise locations of the easements, it has concluded that the easements are express and not implied. Therefore, no equitable relief in this regard is necessary.

In Count V of plaintiff's complaint, it seeks an easement by estoppel. The doctrine of estoppel is appropriate in this case inasmuch as the court believes that the defendant cannot contradict the utilization of the property as it has been used by her predecessor-in-title, persons holding common title to the entire parcel. While it has found that there are parts of these express easements that are easements in gross, the past history is important in establishing the purpose and intent of the easement. To the extent the defendant seeks to terminate the use of the easements in a manner

---

[6] Given the history of this case, if such cannot be reasonably accomplished, the court would retain jurisdiction to supervise such placement.

15

inconsistent with her predecessor-in-title, she is estopped from asserting that right to do so.

Count VI of plaintiff's complaint requests an easement by prescription. While there is some evidence that the roadway in the First Easement has existed in excess of 20 years, this court is satisfied that the express easement provides rights in the plaintiff for its grocery store and gas station operation and the court will not go further and declare it to be a public roadway as suggested.

Count VII of plaintiff's complaint asks for punitive damages. The history of this case indicates that the defendant brought a motion for summary judgment seeking to obtain judgment on the issue of punitive damages arguing none of the plaintiff's complaint alleges a tort and therefore there is no ground for punitive damages. Relying on *Anchors v. Manter*, 714 A.2d 134, the court denied the motion for summary judgment finding that interference with property rights in an outrageous manner is sufficient to sustain a verdict for punitive damages and to the extent plaintiff's complaint has alleged outrageous and malicious interference with its rights with respect to the easements, she is entitled to punitive damages.

From the moment the concrete wall was built, the defendant, her family, and persons living downhill, have been concerned with the radical change in terrain. Where there previously had been a grassy slope, upon the installation of the gas tanks and concrete wall and pavement, there exists a non-percolating collection point for storm water which, by necessity, would flow downhill across defendant's land. Since an area with high vehicle utilization can accumulate petroleum products on the ground, the flow was damaging the grass and other vegetation of the defendant. It also represented an extremely unattractive sight. There is evidence that the defendant

16

discussed these matters with Mr. Holmes, the owner of plaintiff's property who installed the concrete wall, and discussions were held relative to placing a fence on top of the concrete wall or on the property line. The defendant also testified that she had discussions with the principal owner of the plaintiff both prior to and subsequent to her corporation's acquisition of the property and made her aware of the landscaping plans existent in defendant to address the drainage problems and to improve the appearance.

From an examination of the site, it is obvious that the fence and the landscaping substantially improved the appearance of the properties. Other than recited as in these findings of fact, the landscaping does not interfere with the plaintiff's use of its property. Indeed, it may add some level of privacy to that land and buildings. It is also tastefully and professionally done. However, two things disturb the court: the landscaping in the area of the Second Easement and the wall, to the extent it completely blocks the area, is a significant interference with that easement and is totally inconsistent with the ways that existed prior to the placement of the concrete wall. Secondly, it would appear that further landscaping and fence erection took place subsequent to a judicial settlement conference attempted by the parties during the pendency of this litigation. Such activities during the pendency of litigation is a strong indication of a malicious disregard by the defendant with the rights of the plaintiff to have its case heard and decided before interfering with the easements. This is troublesome.

The defendant has a counterclaim alleging in count I that the plaintiff has unlawfully attempted to exclude the defendant from a portion of the defendant's property. She complains in count II that the plaintiff has attempted to preclude the defendant from utilization of an easement area by instructing the plaintiff's employees

and customers to place their vehicles within the defendant's right-of-way and parking areas. She also alleges that the plaintiff's obstruction of the use of her real property is unlawful and malicious. In count III of her counterclaim, she asks the court to declare that the First and Fourth Easements have been extinguished and to issue an order enjoining the plaintiff from further use of enjoyment of these easements. She does so upon allegation that the plaintiff has not paid the cost required in the explicit language of the easements. Finally, in count IV of defendant's counterclaim, she seeks money damages for refusal on the part of the plaintiff to make an annual payment required under the Fourth Easement alleging there is currently an outstanding amount of $300. She also asks for attorney's fees. In its reply to the counterclaim, the plaintiff acknowledges an obligation to pay one-half of the cost associated with maintenance of the First Easement and the well in the Fourth Easement but alleges that obligation runs to A. True and Shirley L. Hall rather than the defendant. Further, the plaintiff alleges that it has not been apprised of any cost for which the share requirement applies. The plaintiff further points out that the $300 requested by the defendant toward the operational cost of the Fourth Easement is owed by plaintiff and plaintiff's predecessor-in-title. It denies any responsibility with regard to its predecessor-in-title.

The entry will be:

> (1)   Judgment for plaintiff on count I of its complaint; there being no exclusive language, but subject to the reserved rights stated therein, the plaintiff and the defendant as owners of the dominant and servient tenement's are DECLARED to have a right to use the easements recited in this Decision in such a manner as to not interfere with the other's use thereof;
> (2)   Defendant is ENJOINED from obstructing the plaintiff's use of the easements and must remove all impediments to plaintiff's use including, without limitation, fences, except as reasonably gated, stones, shrubs, fill, and other landscaping objects, but may make full use of landscaping techniques consistent with the shared use of the easements;

18

defendant shall not place any signs in or about the easements inconsistent with the joint use of the easements by plaintiff;

(3)     It is also DECLARED that plaintiff shall not place any obstructions or signs inconsistent with the shared use of the easements by the defendant; judgment for plaintiff on count II of its complaint;

(4)     Defendant is PERMANENTLY ENJOINED from interfering in any way with plaintiff's use of the rights-of-way and placing any obstructions therein except as may be consistent with plaintiff's utilization;

(5)     Defendant is further ENJOINED from publishing to any third person any instructions inconsistent with the express rights of plaintiff and defendant in the easements;

(6)     Judgment for defendant on count III of plaintiff's complaint;

(7)     Judgment for defendant on count IV of plaintiff's complaint;

(8)     Judgment for plaintiff in count V of plaintiff's complaint; defendant is estopped from denying plaintiff's use of the express easement in accordance with past utilization including, but not limited to, removal of vehicle parked in the rights-of-way when necessary for the reasonable activities of plaintiff's commercial enterprise;

(9)     Judgment for defendant on count VI of plaintiff's complaint;

(10)     Judgment for plaintiff on count VII of plaintiff's complaint in the amount of $1,000;

(11)     Judgment for plaintiff on count I of defendant's counterclaim;

(12)     Judgment for plaintiff on count II of defendant's counterclaim;

(13)     Judgment for plaintiff on count III of defendant's counterclaim;

(14)     Judgment for defendant on count IV in defendant's counterclaim in the amount of $50;

(15)     Neither party having established its right to attorney's fees under prevailing law, the court makes no award of attorney's fees;

(16)     The plaintiff is deemed to be the prevailing party for purposes of assessment of cost.

The clerk may incorporate this decision and order in the docket pursuant to M.R. Civ. P. 79(a).

Dated: March  8 , 2002

Donald H. Marden
Justice, Superior Court

19

Date Filed ___9/20/99___  ___Knox___  Docket No. ___RE-99-017___
                          County

Action ___Boundary Dispute___


                    ZEMERO, CORP.              DIANE HALL
                                      vs.

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| Joanne Kroll, Esq. **(W/D 1/2/01)** <br> PO Box 1515 <br> Rockland, ME 04841 <br> 596-0834 <br><br> James W. Strong, Esq. <br> PO Box 56 <br> Thomaston ME 04861 <br> 354-0915 | Willard D. Pease, Esq. <br> PO Box 664 <br> Rockland ME   04841-0664 <br> 594-4421 <br><br> Wayne R. Crandall, Esq. <br> PO Box 664 <br> Rockland ME   04841-0664 <br> 594-4421 |
| Date of <br> Entry | |

| | |
|---|---|
| 9/20/99 | Complaint, Complaint Summary Sheet filed by Attorney Kroll. |